JOHN SAUNDERS v. ALFRED WILSON.

The statute of this State, which secures to possessors of real property, in good faith, reimbursement from the true owner, for permanent and valuable improvements made on the property by the former, shown to be consistent with equity, and the civil law, and not inconsistent with the constitution.

Error from Shelby. Tried below before the Hon. Archibald W. O. Hicks.

*J. M. Ardrey*, for plaintiff in error, cited Scott v. Mather, 14 Tex. R. 235.

*W. H. Bristow*, for defendant in error.

HEMPHILL, CH. J. This was a suit by the appellee, Wilson, (plaintiff below,) for a tract of land. Among other matters, the defendant pleaded adverse possession in good faith, and that he had made permanent and valuable improvements. With reference to this suggestion, the Court charged the jury in substance, to inquire whether the defendant had gone into possession in good faith, that is, believing he, or the persons through whom he claimed, were the owners of the land. If not, they would find for the plaintiff the value of the rents from the time of defendant's possession. But if they found the defendant's possession to be in good faith, they would then inquire into the value of the rents from the commencement of the suit, and, also, the value of improvements made before suit brought ; and if the value of the rents after suit exceeded the value of improvements made before the suit, they should subtract the value of the improvements from the value of the rents, and find the balance for the plaintiff. But if the value of the improvements exceeded the value of the rents, the jury were charged that they could not find the excess for the de-

fendant, but should simply find for plaintiff for the land, without anything for rent. The jury found a general verdict for plaintiff. Motion for new trial was overruled, and the defendant has brought up the cause by writ of error.

The plaintiff in error has assigned several grounds of error, but relies principally upon the fourth and fifth, which assign error in the charge of the Court with reference to the defendant's claim for improvements; and from his brief in this, and in the case of R. Saunders, plaintiff in error, against the same defendant (Wilson) in error, the point of the objection is to the proposition in the charge, that if the value of the improvements exceeded the value of the rents, the jury could not find the excess for the defendant. This is the only point that has been argued by the plaintiff in error, with reference to the charge, and will be the only one considered by the Court.

That the proposition complained of, is in contravention of the statute on the subject of trying titles to lands, is not disputed; and it is most clearly erroneous, unless the provision which requires the defendant to be compensated for the excess of the value of his improvements, over that of the use and occupation, be in conflict with the constitution, or with the right of the plaintiff in the land, as secured by the constitution. That some of the provisions of the Act for the benefit of settlers in good faith are impracticable, and so derogatory to the rights of the true owner, in the land, as to be obnoxious to constitutional objections, has been decided by this Court; as, for instance, the second Section of the Act of 1844, (Hart. Dig. Art. 3232,) which declares, in substance, that a plaintiff shall not recover from a possessor in good faith, unless he can prove that, prior to the institution of suit, he offered, in good faith, to refer the question of pay for improvements to arbitration, &c., or that he tendered payment for the improvements. This was held to be contradictory in itself, and too oppressive upon the owner of the land, to be enforced by Courts of Justice. By the statute, the right of the defendant

to pay for improvements depends upon his possession being in good faith. The requisition that the plaintiff should, before suit, pay the defendant for improvements, when one of the very objects of the suit is to ascertain whether he is entitled to any such pay—that is, whether his possession be in good faith or not—strikes the mind as suicidal in itself, and as the extreme of injustice, and in conflict with the constitution ; and as such, it was held in Hearn v. Camp, (18 Tex. R. 545,) decided at the late Term in Galveston. But the provision that a defendant, a possessor in good faith, through whose toil and capital the land has received a great accession in value, should receive full compensation for permanent and valuable improvements, is liable to no objection, either on constitutional grounds or on those of sound policy or fair and honest dealing between man and man. That a right to land essentially implies a right to the profits accruing from it, is an admitted principle ; but even at common law, this right is qualified, and the occupant allowed to set off his meliorations or improvements against, and to the extent of the claim for rents. (Green v. Biddle, 8 Wheaton, 76, 81 ; 5 Co. 30 ; Co. Litt. 4 b.) And in equity the right of the possessor in good faith, to pay for improvements made at his expense, is not restricted to mere set-off against the rents ; but he is entitled to the excess, or to full compensation for his improvements. (2 Story's Eq. 799 a.)

In Bright v. Boyd, 1 Story, 478, 494, it is said that, where the owner of an estate, after a recovery thereof at law from a possessor in good faith, seeks an account in equity against such possessor, for the rents and profits, he is required to deduct therefrom the full amount of the improvements made, beneficial to said estate ; or if the true owner holds only an equitable title, and seeks the aid of the Court to enforce that title, he will receive it only on the condition of pay to the defendant, (a *bona fide* possessor,) for improvements. In these cases the possessor was defendant ; but in the opinion of Mr. Justice Story, the Court ought to go further, and grant active

relief to the *bona fide* possessor, by sustaining his bill for permanent meliorations and improvements, brought by him against the true owner, after he has recovered the premises at law ; or, in other words, to effect by two suits, one at law and the other in equity, what is proposed, by the statute in this State, to be done in one suit.   The claim of the *bona fide* possessor is, in the opinion of this most eminent Judge, founded in the highest equity ; and he cites, in support of his opinion, numerous passages from the Roman law, and from the laws of modern nations which have derived their jurisprudence from Rome.   He says that it is a grave mistake, sometimes made, that the Roman law confined its equity or remedial justice to a mere reduction from the amount of the rents and profits of the land.   It allowed compensation for all expenditures which enhanced the value of the estate, and beyond the amount in which the possessor had been reimbursed out of the rents and profits.

In Scott v. Mather & Burns, 14. Tex. R. 235, which was not decided until after the trial was had in the case now on hand, it is said that the right of the possessor in good faith, to be remunerated on eviction, for his improvements, was a principle of the laws of Spain, which were in force up to the adoption of the first statute on the subject of improvements.   Having access to some authorities not within the reach of the Court when that opinion was delivered, I will make some further citations in support of the proposition, and, also, to show the law generally, of Spain, in regard to improvements.

Escriche, in his dictionary, divides improvements into three classes : necessary, beneficial, and voluntary.   Necessary, are those made to prevent the loss or deterioration of the property ; as repairs on an edifice threatened with ruin, or an embankment to secure lands from overflow.   Beneficial, are such as though they are not designed to preserve the property, yet enhance its value or rent ; as the planting of trees, vineyards, the construction of wine-presses, granaries, stables,

&c. The voluntary, are those which serve merely for ornament, as paintings, flower beds, &c.

The possessor, whether in good or bad faith, who shall have made what are styled necessary improvements on the house or lands of another, is entitled to compensation; and though judgment has gone against him for the land, yet he is not compelled to surrender possession until paid, deducting, however, the rents or profits which he shall have received.

The possessor in good faith can recover for beneficial improvements in the same manner that he can for those that are necessary. But he of bad faith, if the owner will not pay for his improvements, may remove them from the premises (*puede elevarse la labor que hizo.*) The possessor in good faith can also take and remove his ornamental improvements, unless the owner of the land be willing to pay for them; but he of bad faith cannot recover for such improvements, nor can he take them away.

In support of this summary, the author cites L. L. 41, 42, 43 and 44, Tit. 28, Part 3, y, L. 24, Tit. 8, Part 5. *Vid Dic verbo*, Mejora.

This statement of the effect of the laws cited, is subject to some modification, as is shown by the laws themselves which I have examined, and by other articles of the same author in his dictionary. For instance, a possessor in bad faith does not include one who may have stolen the property or entered without right. Such possessor must restore the property, with all its profits actually received, and those which might have been acquired by the true owner, had he been in possession. But a possessor who enters under a title acquired from another, with notice that his vendor had no power to sell, holds in bad faith, and is compelled to restore the fruits actually received, with a deduction, however, of the expenses incurred. This is also subject to qualifications and exceptions. In relation to the right of a possessor to remove any of the improvements he

may have made, this, it is presumed, would not give a right, at least generally, to demolish or remove edifices. The soil is the principal, and the building but the accessory, and becomes the property of the owner of the soil, whether it be built by one in good or in bad faith. The builder in good faith has the right to compensation, but if in bad faith he can claim only for creations that were necessary, (Escriche *verbo,* POSEDOR EN LA MALA FE ; ACCESSION INDUSTRIAL.)

There are other provisions, illustrative of the strict equity which characterizes the Spanish jurisprudence, but which would extend this opinion too much to specify in detail.

It appears, then, to have been a principle of our former jurisprudence, that the possessor in good faith should, on eviction, be reimbursed by the owner, for the expenses of improvements made by him, deducting for the rents and profits received; that this was recognized in Roman jurisprudence, the great fountain of most of the modern law of the civilized world ; that it is sanctioned, to a great extent in equity, and, in the opinion of Justice Story, should go the whole length of the remedial justice administered under our statute. As this has always been the recognized law of Texas, from the grant of the first title to lands, almost a century and a half since, to the present time, it would seem to be a principle as venerable for its antiquity, as for its fair and impartial justice, and as such, should be enforced by the courts and juries of the country. Most clearly, it is not in conflict with any provision of the constitution. It is repugnant to no right which an owner has, or ever did have, in land in this State. I have before stated that the charge of the Court in this case was delivered prior to the decision in Scott v. Mather & Burns, 14 Tex., when the principle was not regarded as settled.

The subject has now been treated at great length, for the reason that some of the authorities were not then accessible to the Court.

The defendant in error contends, in substance, that though

there may have been error in the charge of the Court, yet no injustice has been done the plaintiff in error, he not having offered such proof as would show that his possession was in good faith.

It is very evident that, in the opinion of the jury, the possession was in good faith. They were charged to inquire into the fact, and to award rents to the plaintiff below, from the beginning of the possession, if it was in bad faith. They found no rent for the plaintiff, and such verdict implies that the possession was in good faith; and though the evidence was not satisfactory, yet the jury under it, might have attained the conclusion that Saunders went into possession, believing himself to be the owner. It appears that at an early day, the land was claimed by Dolignes, under a purchase from Crawford; that there was a contract between Dolignes & Moore in 1840, for the division of the land, and that this was to be made by L. McGuire or some other surveyor; that this L. McGuire, acting as agent for Dolignes, binds himself, in Nov. 1841, to make title to either Robert Saunders or John D. Moore, to one-half of the land, as soon as he got a patent from the Government. The presumption from this instrument is, that there must have been some transaction between Moore and Sanders, by which the latter acquired an interest in the land. McGuire was a man in whom the owner of the land had confidence. He, in the capacity of agent, transferred an interest in the lands. The transferee, Sanders, went into possession and remained in possession, making by himself and son, valuable improvements, for nearly ten years before suit is brought. There was no proof that McGuire had a power of attorney from Dolignes; but, waiving the presumption which, perhaps, might from lapse of time, be claimed in support of his authority, yet we think that, under all the circumstances, the jury might have found that Sanders had reasonable grounds to believe he was the owner, when he went into possession. This was undoubtedly the conclusion of the jury. As there

were some grounds for this conclusion, the defendant should have had the benefit of their finding. Of this he was deprived by the error in the charge of the Court; and the judgment is therefore reversed, and cause remanded for a new trial.

Reversed and remanded.