ROBERT DORN AND ANOTHER V. M. T. DUNHAM AND OTHERS.

A tenant in common of an undivided interest in land, cannot prejudice the rights of his co-tenants, by an agreement to convey a designated portion of the tract; and a selection, made by the obligee, under it, will confer no title on him, as against such co-tenants.

The tender of a deed, from such obligor, to the obligee, for a different part of the tract from that agreed to be conveyed, and which had been selected in pursuance of their agreement, is not a compliance with the contract, and the obligee may refuse to accept it.

If, under such an agreement, the obligor were unable to make title, by reason of the land falling to the share of another, in a partition between the co-tenants, the remedy of the obligee, would be by a suit for damages, for the breach of the contract; and where the obligee has refused to accept a deed for a different portion of the land, a subsequent conveyance by the obligor, will vest the title.

The acquisition, by the obligee, of the possession of the deed which he had so refused, by whatever means obtained, will not avail him, as a title, against such subsequent grantee, if he had notice of such title before obtaining the deed.

The right to recover for improvements, under a suggestion of good faith, is not dependent on the plaintiff's claim for rents and profits; nor is it limited to cases in which rent is claimed, or compensation for the use and occupation is allowed.

A possessor in good faith, within the meaning of the statute, will be entitled to compensation, for the permanent and valuable improvements he has made upon the land, while so in possession, though it should turn out, that his title is defective, or that another has the superior title.

As a general rule, to constitute one a possessor in good faith, he must not only believe that he is the true owner, and have reasonable ground for that belief, but he must be ignorant that his title is contested by any person claiming a better right.

But there may be cases where, though aware of an adverse claim, the possessor may have reasonable and strong grounds to believe such claim to be destitute of any just or legal foundation, and so be a possessor in good faith.

The doctrine, on the subject of good faith, as recognised in Robson v. Osborn, questioned, as applicable to that case.

Testimony relevant to, and offered in support of, an issue, (as of good faith in the defendant, in an action of trespass to try title, under his claim for improvements,) cannot be rejected by the court, on the assumption, that the evidence already adduced, shows a state of facts, inconsistent with the truth of the proposition, for the proof of which the testimony is offered.

ERROR from Gonzales. Tried below before the Hon. Fielding Jones.

This was a suit commenced on the 17th March, 1858, by Mortimer T. Dunham, and his wife, Bathsheba Dunham, formerly Bathsheba Best, and widow of E. W. Best, deceased, as guardians of Emily N. Best, John Best, and Stephen Best, the minor heirs of the said E. W. Best, against Robert Dorn and Stephen Best, for the recovery of, and quieting of the title to 1000 acres of land, conveyed to the said minor heirs by Margaret Best, their grandmother.

Margaret Best was the owner of 2000 acres, (an undivided interest in a tract of land on the San Marcos river, known as the Solomon Seals league,) that being her portion in the division of the estate of her deceased husband; the title to the residue of the tract was vested in the heirs of her deceased husband, in Jonathan York, who owned 1500 acres, and in Isaac Welden, who owned 350 acres.

On the 10th day of September, 1851, Margaret Best executed a deed to the minors, Emily, John, and Stephen Best, for 1000 acres of the land, "adjoining and below York's land." The plaintiffs claimed under this deed, and sought to recover the same from Dorn, who was in possession of, and claimed the same.

In August, 1850, the said Margaret made a contract with Robert Dorn, to build houses for her, and for the improvement of a residence, to be selected by Dorn, on the 2000 acres of the Seal's league of land, which belonged to her; and by the terms of the agreement, for the said services, she was to give him a warrantee title to land on the tract, to include his improvement, at $1.50 per acre, in payment for the buildings and improvements. The work to be valued, by three or more disinterested persons, when finished; and it was further agreed, that Dorn "should have the refusal of the one half of the above-mentioned tract of land, at $1.50 per acre."

At that time, she was living with her daughter-in-law, the widow of E. W. Best, deceased, and it seems, that she designed giving to the wards of the plaintiffs, 1000 acres of her land, and

that the improvements which she was contracting for, she contemplated should be occupied and enjoyed by her daughter-in-law, and these minors, who expected to remove unto the same.

Dorn went on the land, and resided there in October, 1850, and continued to occupy it as his residence. There had been no partition, nor agreement for partition, of the land, among the owners of the several interests. He made choice of, and settled on the 1000 acres, next to the upper 1000 acres of the league; and it was in evidence, that before the making of the contract, the different undivided interests of the various owners of the league, was the subject of conversation, in which Dorn and Margaret Best, and the witness participated, in speaking of the contract that was in contemplation between them.

Subsequently to the making of the agreement with Dorn, in the fall of the year 1850, Margaret Best proposed to Dorn, to abandon the making of the improvements, to which he assented, expressing himself indifferent as to how he should pay for the land. When he settled on it, under his contract with Margaret Best, he made choice of the 1000 acres next to, and below the upper 1000 acres of the league.

On the 18th day of July, 1851, Margaret Best executed a deed to Dorn, for 1000 acres, of the 2000 acres owned by her, which was therein described by metes and bounds, "beginning at a stake, set on the bank of said river, (San Marcos,) for the lower corner of a survey of 1500 *acres, made for Jonathan York, off of the extreme upper part* of said Seal's league," and proceeding to set out the boundaries of the said 1000 acres, conveyed to him as aforesaid, adjoining to, and below the 1500 acre survey of York. This deed, with a power of attorney to deliver it to Dorn, upon the payment of $1500, she delivered to her son Stephen, who, with M. T. Dunham, one of the appellees, who had in the meantime married the widow of Eben Best, went to Dorn, and offered him the deed on payment of the money. But when the deed was read to him, he refused to accept it, and to pay the money, because it did not describe the land which he

desired, and declared that he would sue Margaret Best for damages.

Best and Dunham returned to Lavacca county, taking the deed with them; and Margaret Best, on the 10th day of September, 1851, executed a conveyance of the land, for which Dorn had refused to accept a deed, to the wards of the appellees, John, Emily, and Stephen Best, junior, as hereinbefore set forth, and delivered the deed to Mrs. Dunham, their mother, for them, having previously, on the 2d day of the same month, revoked the letter of attorney which she had given to her son Stephen.

It was proved, that in the month of January, 1852, Stephen Best, handed to his mother, about ten days previous to her death, the deed which Dorn had refused to accept; and she returned it to him, with the request that he would give it to Dorn, and get the money, which the latter was to pay for the land. This deed was filed for record on the 29th day of May, 1852; but there was no evidence to prove when, or in what manner, it was delivered to Dorn. The plaintiffs alleged that Stephen Best, in violation of the revocation of the power of attorney given to him by his mother, to deliver the deed to Dorn, had fraudently colluded with the latter, to cheat them, and had, without authority, delivered the deed to Dorn; that Dorn was in possession of the land therein described, claiming the same, and that he had notice that Margaret Best had revoked the said power of attorney, and had required the said Stephen to deliver to her the deed, which, they alleged, he refused to do, and delivered it as aforesaid, after her death; and they prayed that whatever title the said defendants had in the land, might be divested from them, and for a judgment against Dorn, for $1000, for the use and occupation of the land.

The answer of Dorn suggested, that he had settled upon the said land, and made his improvements in good faith, relying upon the good faith of the said Margaret, and the validity of his said contract with her; that up to the time of her death, his right had never been disputed or disturbed, nor since, until the institution of this suit; and therefore he prayed that the value of his

improvements might be allowed to him. He also answered at length to the merits.

On the trial of the case, the defendant, Dorn, offered to prove that Margaret Best put him in possession; and to prove, also, the value of the improvements he had made; to which the plaintiffs objected, and the objection was sustained. The bill of exception did not show what was the ground of objection.

One of the answers of the defendant, Dorn, alleged, that at the time of making his contract with the said Margaret, he was ignorant of the fact, that her interest was undivided, as he afterwards ascertained it to be; but from the representations of the said Margaret, he believed that her 2000 acres, comprehended the upper side of the league, by a line run, or to be run, from the front of said league, on the San Marcos river, to the rear thereof, or back line, so as to give the aforesaid quantity of 2000 acres; that the bond of the said Margaret was intended to mean (and was so understood, and acted upon by the parties to it,) that the improvements for the residence contracted for, should be made on the said 2000 acres, on the upper part of the said league; which improvements, when made, were to be valued as stipulated in the said contract or bond, and the value thereof to be paid to the defendant, by the said Margaret, in such other portion of the 2000 acre tract, as he might select and improve for himself. And that whether the said contemplated improvements for the said Margaret, should be of value sufficient, or should fall short of $1500, (the value of 1000 acres, at $1.50 per acre,) nevertheless, the defendant should be entitled to the full amount of 1000 acres of the said 2000 acre tract, at that rate, estimating the value of whatever improvements might be made by the defendant, for the said Margaret, and allowing the amount thereof as a payment on the said 1000 acres.

The defendant further alleged, that in accordance with such contract and understanding, he went upon the upper 2000 acre tract, and settled thereon, and commenced an improvement for the said Margaret on the upper half thereof; and at the same time commenced an improvement for himself, on the lower 1000

acres of the same, and was progressing with the said improvements when he was advised, as before stated, of her abandonment of the intention to build on the land.

It was proved, that Dorn knew of the making of the deed, by Margaret Best to the minors, Emily, John, and Stephen Best, as early as October, 1851.

There was a verdict, and judgment for the plaintiffs, for the land sued for, with a writ of possession, and a decree cancelling and annulling the deed from Margaret Best to the defendant, Dorn, dated the 18th day of July, 1851.

*W. L. & C. L. Robards*, for the appellants.—From the evidence developed, and the admissions in the pleadings, the following propositions are deducible. 1st. The deed from Margaret Best, to Robert Dorn, took effect at the time it was delivered, to Stephen Best, to wit, the 18th August, 1851. "If a grantor deliver any writing, *as his deed*, to a third person, to be delivered over by him, to the grantee, on some future event, it is the grantors deed, *presently*, and the third person is the trustee of it for the grantee. And if the grantee obtain the writing from the grantor, before the event happened, it is the deed of the grantor, and he cannot avoid it, by the plea of *non est factum*." When Mrs. Best delivered the deed to Stephen, to be delivered to Dorn, Stephen became the trustee of it for Dorn, and it matters not, whether he performed the condition or not, it is her deed, and the grantor, Mrs. Best, and those claiming under her, cannot avoid it.

But if we even apply the strict doctrine applicable to escrows, in this case, the delivery took effect from the time of the delivery to Stephen. Generally, an escrow takes effect from the second delivery, and is to be considered the deed of the party from that time. In cases, however, where it becomes necessary, for the purposes of justice, there is a relation back to the first delivery. (Burrill's Law Dic., tit. Escrow.) "If a *feme sole* seal a writing, and deliver it as an escrow to be delivered over on conditions, and she afterwards marry, and the writing be then delivered over

on the performance of the condition, it will take effect from *first delivery*, otherwise her marriage would defeat it." Again, " a lessor makes a deed, and delivers it as an escrow, to be delivered over on condition performed, before which the lessor dies, and afterwards it is delivered over on condition performed, the deed shall be the deed of the lessor, from the *first delivery*." (Sug. on Vend. 312, n. 165.) Mrs. Best, before her death, delivered the deed to Stephen, to be delivered to Dorn, on payment of the purchase-money; before performance of condition she died, and the deed is then delivered on performance of condition; it is her deed from the time of the first delivery.

But this deed is not an escrow, which is a deed *sealed* up and *enveloped*, and delivered to one party, to be delivered to a third. (Burrill's Law Dic., tit. Escrow.) Where the deed is neither *sealed* nor *enveloped*, it does not require even the performance of condition, to make it take effect from first delivery. (Ruggles v. Lawson, 13 Johns. 205; Hatch v. Hatch, 9 Mass. Rep. 307; Sug. on Vend. 312, n. 168.)

2d. The court erred in ruling out the testimony in proof of good faith. See Hays v. Bonner, 14 Texas Rep. 632, and Sartain v. Hamilton, 12 Id. 222, which demonstrate that Dorn was entitled to his improvements on the ground of *good faith*. But even apply the more strict rules governing the rescission of contracts, and Dorn was entitled to compensation for his improvements; (2 Story's Eq. Jur., §§ 799, 799 a, 799 b, 1237; and many authorities cited in the notes.) But we deny that Mrs. Best, herself was entitled to a rescission of the contract in her lifetime; (Hawk v. Greensweig, 2 Barr, Rep. 295, directly in point; 2 Story's Eq. Jur., § 742, n.; Estes v. Browning, 11 Texas Rep. 237; Benedict v. Lynch, 1 Johns. Ch. 370.)

3d. If Mrs. Best had the right to rescind, she waived that right by subsequent acts. (Lawrence v. Dale, 3 Johns. Ch. 23.) If she could not rescind in her lifetime, those claiming under her cannot.

4th. There is no allegation of fraud and collusion, on the part of Dorn, before Mrs. Best's death. Even if he did commit

fraud, in obtaining the deed, it cannot relate back, and affect his rights, acquired under the original agreement. (Chesterman v. Gardner, 5 Johns. Ch. 29.)

*Shelley & Carrington*, for the appellees.—Dorn went upon the land, with a full knowledge that Mrs. Best's interest of 2000 acres in the Seals' league, had not been partitioned and set apart to her. He was fully advised of this fact, and of the necessity of her interest being defined, either by agreement of the parties interested, or by a suit for a partition, by the witness, Wills, before any contract was made between himself and Mrs. Best. If he made any selection of the land for himself, he did so at his own risk, and he could not make the fact, that York, by agreement with Stephen Best, had gotten any particular portion of the league, which he did not expect he would get, a pretext for refusing to take the 1000 acres, offered to be conveyed to him by Mrs. Best, or upon which to sustain his demand that she should convey to him any other land, than that offered to him.

He had notice, also, that Jonathan York could have his 1500 acres set apart to him, out of the entire league; and that unless he was a party to an agreement for a division, he could not be bound by it. Dorn, therefore, could not make a demand, which was not made by the original contract, (and which it had become impossible for Mrs. Best to comply with, as he knew, since York had gotten the upper 1500 acres,) an excuse for a failure on his part, to proceed with the contract, as it was made, performance being offered by Mrs. Best. (Ketchum v. Evertson, 13 Johns. Rep. 365; Ellis v. Hoskins, 14 Id. 363; Hudson v. Swift, 20 Id. 26.)

Where a purchaser takes possession, under a contract, and afterwards rejects it, or refuses to accept its performance, on the part of his vendor, and to comply on his part, he must relinquish possession, although he has made improvements. (1 Sugden on Vendors, p. 407, § 57.) Until payment of the purchase-money, the vendor has the superior title; and if the contract is

executory, and the vendee refuses or fails to make payment, the vendor may consider the purchase abandoned, and treat and hold the property as his own. (Howards v. Davis, 6 Texas Rep. 174; Whiteman v. Castlebury, 8 Id. 441.) The superior title remained with Margaret Best; and when Dorn would not pay the money, and accept the deed, she could have treated him as a trespasser, and ousted him. (Browning v. Estes, 3 Texas Rep. 462, and authorities there cited; also, Todd v. Caldwell, 10 Id. 236.)

A vendee who refuses to go on with the performance of his contract, forfeits the amount already paid, and the vendor may bring his action of ejectment, and recover the land agreed to be conveyed. (Estes v. Browning, 11 Texas Rep. 237, 243; and cases in 13 and 14 Johns. Rep., cited above.) The vendee could have no higher right to compensation for improvements, than to the return of the money he had paid. The utmost that Dorn could have required of Mrs. Best, under their contract, was, that she should convey to him 1000 acres, selected by him, " according to the usual subdivision of land," out of the 2000 acre tract, wherever it might be partitioned to her on the Seals' league. York having obtained the upper 1500 acres, it became impossible for her to make a good title to the " lower half " of the upper 2000 acres of said league. And yet, Dorn peremptorily refused to proceed with the contract on his part, unless she would convey to him 500 acres of the land belonging to York. Was not the contract then at an end, as to any further obligation on Mrs. Best? Could she not have elected to abandon it, and brought her suit to eject Dorn from the possession?

These inquiries have been so repeatedly answered affirmatively by the decisions of this court, that they cannot now be open for argument. Nor is it less authoritatively settled, that Mrs. Best could convey a perfect title to another. She did so, *effectively* and *conclusively*, as against herself, when she executed and delivered the deed to Mrs. Dunham, the mother of her grandchildren. (4 Kent, Com. 5th ed. p. 462, § 3; Buckle v. Mitchell, 18 Ves. 110; Hudnal v. Wilder, 4 McCord, 294, 310; Kane

v. Mackin, 9 Sm. & Marsh. 387; Kid v. Mitchell, 1 Nott & McCord, 339.)

But it is insisted by appellants, that the execution of the deed to Dorn, by Mrs. Best, and its being placed in the hands of Stephen Best, passed the title to Dorn, and none remained in her to convey to the wards of the appellees. If this proposition *can* be correct, then we submit, that the title vested in Dorn, without any character of consideration, either "good or valuable," passing to the grantor. There can be no question about the fact, that the deed was placed in the hands of Stephen Best, to be delivered to Dorn, *only* upon his paying the sum of $1500. When it was offered to him, he even refused to receive it upon any terms. We deny that this proposition of appellants is sustained, either upon principle or authority. Where a deed is delivered to a stranger, to be delivered to the grantee, upon his paying the purchase-money, the title does not pass until the money is paid; but remains with the grantor. (See 4 Kent, Com. 5th ed. 454; Jackson v. Catlin, 2 Johns. Rep. 248.)

The question we think is reduced to this. Dorn was either entitled to the land or he was entitled to nothing; and such was the opinion of the judge trying the cause. If this be true, the evidence as to date of possession and improvements, was irrelevant and immaterial; and Dorn has not been injured by its exclusion from the jury.

Again, if the appellees were entitled to recover the land, and the appellant, Dorn, entitled to recover for improvements, then the appellees were entitled to rent. Dorn has not been charged with the rents and profits, and he is still not injured. When the appellees seek to recover the rents, it will be time enough for him to claim improvements. If the title to the land did not pass to the wards of appellees, by the deed from Margaret Best; and the deed to Dorn came to his possession upon the payment of the purchase-money, in good faith, and upon proper authority, then it might well be insisted, that Dorn should recover the land; but if he never paid the purchase-money, and obtained the deed by fraud and collusion with Stephen Best, he has not

even an equity which he could enforce against Mrs. Best. The jury found, by their verdict, that the purchase-money had not been paid by Dorn; and that he obtained the deed by fraud and collusion, with his co-defendant, Best, (the mere possession of the deed, the recital of the payment of the purchase-money, being negatived by the testimony unexplained, would raise a presumption of fraud,) and we feel confident that this court will not say that two juries have been unauthorized by the testimony in thus finding. This court will not disturb the verdict of a jury finding a transaction tainted with fraud; fraud being a question of fact to be determined by the jury.

WHEELER, C. J.—It is not questioned, that the plaintiffs were entitled to recover, by virtue of the deed of the 10th of September, 1851, if the defendant, Dorn, had acquired no title, legal or equitable, to the land in controversy. It is material, therefore, to inquire as to his title at the date of the conveyance from Mrs. Best to the plaintiffs. When the contract of the 10th of August, 1850, was entered into between Mrs. Best and Dorn, it appears that Mrs. Best was tenant in common with others, having an undivided interest of 2000 acres in the league, of which the land in controversy is a part; until partition she could not convey a part of it to a stranger in severalty. (Heirs of McKey v. Welch, 22 Texas Rep. 390; 1 Hilliard on Real Property, tit. Tenancy in Common, ch. 54, §§ 37–47.) She could make no contract or conveyance to the prejudice of her co-tenants; she could not convey her co-tenant's share in a designated portion of the land, or by her own single act, without their consent, make severance or partition of the estate held in common. She could not convey to Dorn a distinct portion of the land by metes and bounds. Notwithstanding her contract with him, her co-tenants might have the part, which he selected, set apart to them in the partition.

By the contract, therefore, with Mrs. Best, Dorn acquired no title or right to the land he selected under the contract; a part of it was set apart, in the partition, to one of her co-tenants,

which put it out of her power to make him a title. Thus the matter stood, when the deed of the 18th of July, 1857, under which the defendant, Dorn, now claims, was made and tendered him. That deed was not a compliance with the contract of the 10th of August preceding, under which the defendant went into possession. It was not, therefore, an execution of that contract or agreement. It did not convey the land he had selected, pursuant to the agreement. He was under no obligation to accept it as an execution and consummation of the agreement, because, as he said, it was not a compliance with his contract with Mrs. Best, and did not convey the land he had bargained for. The tender of it was, in effect, but a proposition on her part to convey to him other lands in place of that he had chosen under the contract. It was a proposition to substitute other land; which proposition he was at liberty to accept or not, as he saw proper. He did not see proper to accept, but rejected the proposition, and refused to receive the deed. No interest, therefore, passed by it. The title remained, as before, in Mrs. Best, who, when apprised of the refusal of Dorn to accept the deed, made the conveyance to the plaintiffs, and the title thereby vested in them. She had not previously parted with the title to the land embraced by the deed; and having the title and power of disposition, could dispose of it as she saw proper; she could give it to her grandchildren, which she did. If she had broken her agreement with Dorn, by contracting to do what it was not in her power to perform, he had his remedy for the breach of contract; but he did not thereby acquire any title to the land. He had none as against the co-tenant of his vendor, who was not a party to the contract, and none, as against Mrs. Best, to this land, which she had not contracted to sell him.

After the deed to the plaintiffs was made and delivered by Mrs. Best, she, having thereby parted with her title, had none to convey to the defendant, Dorn; and if he afterwards came into possession of the deed, which she had previously tendered him and he had refused to accept, with notice of the plaintiffs' title, it could not avail him, by whatever means obtained. Hav-

ing notice of the plaintiffs' title, he is not an innocent purchaser, though he had paid value; and it was only as such, that he could acquire the title from Mrs. Best, after her conveyance to the plaintiffs.

The charge of the court was altogether favorable to the defendant. It made it necessary for the plaintiffs to satisfy the jury that the defendant had abandoned the contract, and that he had paid no part of the purchase-money; and that the deed under which he claims was obtained by fraud. In the view we have taken of the case, he never acquired any title or right to the land here in controversy. His contract did not give him a right to this land; and standing upon his contract, he refused, as he had the right, to accept this in place of the land he had contracted for. He had a right to refuse his assent to any variation of the terms of his contract, or to refuse a deed tendered as an execution of the contract, which did not convey the identical land he had bargained for; reserving his remedy upon the contract for the breach of it, as he did. The plaintiffs' right to a recovery, therefore, does not depend upon his supposed abandonment of the contract, or the supposed fraudulent procurement by him of the deed under which he now claims, but upon his never having acquired the title to the land in controversy. If there be error in the charge of the court, it was not to the prejudice of the defendant; and upon the question of the plaintiffs' title and right to recover, there is, we think, no error in the judgment.

The remaining question is, whether the court erred in excluding evidence offered by the defendant, in support of his suggestion of the good faith of his possession, and his claim for compensation for improvements. It does not appear by the bill of exceptions, upon what ground the evidence was excluded. The reasons suggested in argument for its exclusion, are not satisfactory, and I am unable to perceive any legal ground, upon which the right to introduce the evidence can be denied. It is suggested, that as the defendant is not charged with the rents and profits, arising from the use and occupation of the

land, he is not entitled to compensation for improvements. But it must be observed, that the right to recover for improvements, is not dependent upon the claim for rents and profits, nor is it limited to cases where rent is claimed, or compensation for the use and occupation is allowed. It is independent of such claim on the part of the plaintiff. (Scott v. Mather, 14 Texas Rep. 235; Saunders v. Wilson, 19 Id. 194.)

It is said, the defendant is entitled to the land, or he is entitled to nothing. It may so appear upon the whole evidence, when it shall have been heard and considered. But the argument assumes the very question at issue; that is, whether the defendant, not being entitled to hold the land, as against the plaintiffs, is entitled to compensation for his improvements. If it be intended to maintain, that the defendant must have a good title, to admit proof of the good faith of his possession, and the value of his improvements, it is plainly not correct. It is only where the defendant's title is defective, or the plaintiff has the superior title, that the question respecting improvements, can arise. The defendant's right to compensation for improvements, does not depend upon the intrinsic goodness of his title, but upon the good faith of his possession, and claim of title. If he be a possessor in good faith, within the meaning of the statute, (O. & W. Dig., Art. 2044,) he will be entitled to compensation, for the permanent and valuable improvements he has made upon the land, while so in possession, though it should turn out that his title is defective, or that another has the superior title. And this upon the equitable principle, recognised by the legislature in enacting the statute, that where the party making the improvements, has acted *bonâ fide* and innocently, and there has been a substantial benefit conferred on the owner, *ex æquo et bono*, he ought to pay for such benefit. A *bonâ fide* possessor, has been defined to be one, who not only supposes himself to be the true owner of the land, but who is ignorant that his title is contested, by any person claiming a better right to it. (Green v. Biddle, 8 Wheat. 1; Bright v. Boyd, 1 Story, Rep. 478; Houston v. Sneed, 15 Texas Rep. 310 ; and see Saunders v. Wilson,

19 Texas Rep. 194.)   In Sartain v. Hamilton, this definition was quoted with approbation, but it was intimated, that notice of an adverse claim, would not necessarily destroy the good faith of the possession.   But it was said, the person aware of the claim of another, must have reasonable and strong grounds, to believe in the soundness of his own title ; otherwise he cannot claim to be a possessor in good faith.   (12 Texas Rep. 222.)

The definition, with the qualification subjoined by the Chief Justice, in Sartain v. Hamilton, is perhaps as accurate an expression of the meaning of "good faith," as employed in the statute, as can be given.   As a general rule, to constitute one a possessor in good faith, he must not only believe that he is the true owner, and have reasonable ground for that belief, but he must be ignorant that his title is contested by any person claiming a better right.   But there may be cases, where, though aware of an adverse claim, the possessor may have reasonable and strong grounds to believe such claim to be destitute of any just or legal foundation, and so be a possessor in good faith. He must have reasonable ground to believe, that he is himself the true owner of the land; and this, as I conceive, is the principal test.

In Robson v. Osborn, 13 Texas Rep. 307, 308, we held, that one who purchases from a person, acting as an agent, constituted by law to sell the land of another, but who had not the power to sell, must look to the authority of the agent, and if he either knew, or by the use of reasonable diligence might have known, the want of power in the agent, he could not be a possessor in good faith.   I do not doubt the correctness of the general principle.   It is in accordance with the rule of the Spanish civil law, as stated by the Chief Justice in Saunders v. Wilson, 19 Texas Rep. 198; that is, that a possessor, who enters under a title acquired from another, with notice that his vendor had no power to sell, holds in bad faith.   Though I think the general principal correct, I think it proper to take this occasion to say, I have since had reason to doubt the correctness of its application in that case, and I think it proper to express this

doubt, in order that the case of Robson v. Osborn, may not be thought to conclude that question, in any case which may hereafter arise.

It is unnecessary to pursue the inquiry, as to what will constitute a possessor in good faith. It is not dependent upon the goodness of the title of the party in possession.

But it is insisted, that the defendant, Dorn, went upon the land in question, with notice that his vendor was a tenant in common, that her portion of the land had not been severed and set apart to her, and, consequently, that she might not have it in her power to make title to the part he selected. Whether he had such notice, was a question to be decided by the jury. The court could not assume and act upon it, as a fact established, and make it the basis of excluding evidence, relevant to the issue made by the pleadings. It was the province of the jury to pass upon the evidence. However it may have tended to show a knowledge of the state of the title, and the want of good faith on the part of the defendant, still, it was the province of the jury to pass upon it; and however it might appear to the court, that could not be a ground for rejecting the defendant's evidence. Matters in evidence before the jury, could not be taken as established by legal proof, and made the ground of judicial action, until passed upon by them. The jury may not have found that the defendant had notice of the state of the title; or he might have proved to their satisfaction, that he was led to believe, and had reasonable grounds of belief, from the acts and declarations of all the parties in interest in the estate, that the land he selected was to be set apart, by their common consent, to his vendor ; and that she would be able to make him the title, according to her agreement. It certainly is not inconceivable, that he might have satisfied the jury that he was a possessor in good faith, and entitled to pay for his improvements made before he was apprised of the partition, and the difficulty in the way of his obtaining the title. It would have been proper for the court, to instruct the jury upon the law which should govern them, in deciding upon his right to compensation for his improve-

ments. But we think it was error to exclude the evidence; for which the judgment must be reversed and the cause remanded for further proceedings.

Reversed and remanded.