JOHN SCOTT v. S. M. MATHER AND R. BURNS.

The points involved in the other assignments have been ruled against the defendant in Warren v. Shuman, 5 Tex. R. 441; Lewis v. Mixon, 11 Id. 564, and Hart v. Gibbons, decided at this Term.

Whether all the provisions of our Statute are just, or even constitutional, is not now the question. The point is, whether it be repugnant to the Constitution, to allow the possessor in good faith the full value of his improvements, whether they do or do not exceed the full value of the use and occupation. This, as we have seen, must be answered in the affirmative.

Appeal from Shelby. Trespass to try title by the appellees against appellant. The facts were as follows: The plaintiffs claimed title under a patent issued in 1849, on a headright which had been issued and surveyed on the land in controversy in 1838, and which, not being recommended by the travelling board, was established by suit commenced in April, 1847.

The defendant claimed title under a location and survey of a headright certificate, made in December, 1846; and suggested possession for one year before suit commenced, and improvements in good faith. Defendant proved that he went into the possession of the premises in the Spring of 1846; and proved the value of his improvements.

The Court instructed the jury that the defendant could not recover for improvements, beyond the value of the rents and profits. The jury found for the plaintiffs, and that the improvements were worth the rent.

*Ardrey & Sexton*, for appellant, cited Brodley v. Taylor, 2 U. S. Cond. R. 227; Miller v. Kerr, 5 Id. 202; 2 Story, Eq. Sec. 1237, and notes.

*R. Burns*, for self and Mather.

HEMPHILL, CH. J.   This action was brought by the appel-
lees to try title to a tract of land.   The judgment was in their
favor and the defendant has appealed.   Several errors have
been assigned, none of which need be noticed, except that in
relation to the refusal or modifcation of the fourth charge
asked by the defendant.   The points involved in the other as-
signments have been ruled against the defendant in Warren v.
Shuman, 5 Tex. R. 441; Lewis v. Mixon, 11 Id. 564; and Hart
v. Gibbons, decided at this Term.

The Court, by the fourth charge asked by defendant, was re-
quested to instruct the jury, that if the defendant had settled
upon the land twelve months previous to the commencement of
suit and had made valuable improvements in good faith, he was
entitled to recover the value of such improvements.   This was
given with the qualification, that the defendant was entitled to
recover for permanent and valuable improvements only to the
extent and amount of the rents and profits of the land, while in
defendant's possession, and no farther.

The question presented by this instruction is of considerable
importance.   It has not been argued by the appellees, and the
appellant has referred only to the case of Green v. Biddle, (8
Wheaton, 1.)   We have held the case under advisement for
some time, to avail ourselves of the benefit of discussion, should
the principle involved arise in other causes.   But as this has
not happened, and as it would be inexpedient to further post-
pone the decision, we will proceed to consider whether there
was error in refusing the charge as asked, or in the instruction
which was given.

The Statutes providing the mode of trying titles to lands au-
thorize defendants who have had adverse possession in good
faith for at least one year before the commencement of suit, to
recover for permanent and valuable improvements made on the
land; and unless the Statutes be repugnant to the Constitution,
the charge as asked by defendant's counsel should have been
given, without any such qualification as that appended by the
Court, which is inconsistent with and is in contradiction to the
Statute.

There is no doubt the Court, in appending this restriction on the rights of the possessor, had in view the decision of the Supreme Court of the United States, relative to the occupying claimant laws of Kentucky, in Green v. Biddle, (8 Wheaton, 1.) These laws gave compensation for improvements made by a possessor on lands, supposing them to be his own by reason of a claim in Law or Equity.

In the first opinion it was held unanimously, that these Acts were a violation of the 7th Article of the Compact between Kentucky and Virginia, and were therefore unconstitutional. The 7th Article of this Compact declares " that all private " rights and interest of lands within the said District (of Ken- " tucky) derived from the laws of Virginia, prior to such sepa- " ration, shall remain valid and secure under the laws of the " proposed State, and shall be determined by the laws now ex- " isting in this State." A re-hearing was granted, and the Opinion subsequently pronounced was (as stated in the Opinion) by a majority of the Court ; and in this it was held that these laws, imparing the obligations of a contract, were repugnant to the Constitution of the United States, and therefore void.

This decision has never been recognized by the Courts of Kentucky, as correct in principle, or binding as authority. In Brodley v. Gaither, (3 Monroe, 58, 59,) it was said that the case of Green v. Biddle was decided by three only of the seven Judges that composed the Supreme Court of the United States, and being the Opinion of less than a majority, could not be considered as having settled any constitutional principle. It was not admitted, however, that the decision would have been allowed any binding force, had it been the unanimous Opinion of all the Judges of the Supreme Court. The Courts of Kentucky have uniformly held these laws to be constitutional, and have enforced them for half a century.

But if it were admitted that the Opinion in Green v. Biddle was correct in principle, and conclusive as authority, abrogating the obnoxious provisions of the laws to which it was ap-

plied, yet this would be no legitimate ground for the assumption that our Statute, authorizing compensation for improvements, was unconstitutional, or violative of any contract between individuals, or between the Government and the grantee who claims lands by patent.

The objection, as urged in the Opinion in Green v. Biddle, against the Kentucky Statutes was, that they rendered the rights of the true owner less valid and secure than they were under the laws of Virginia, and imposed burthens upon them not recognized or tolerated by such laws. But the right of the possessor in good faith to be remunerated, on eviction, for improvements, has always been recognized by our laws. This was a principle of the laws of Spain ; and on the abrogation of those laws, it was incorporated in our Statutes to try the titles to lands. I have not access to such books as state fully the rules of Spanish jurisprudence on this subject, but the principle will be seen by reference to the Institutes of Aso and Manuel, as translated by Johnson and found in White's Recop. vol. 1 p. 90. It is there stated that he who unites or adds another's property with or to his own or works on it, with good faith, shall be entitled to remuneration for the expenses and improvements from him who acquires them by reason of the accession ; and reference is made to various laws in the Partidas, which are said to have copied all that was said by the Roman laws on the subject.

The law giving compensation to the possessor in good faith, for his improvements, cannot be held to have violated any contract. This was always the law. It was the law before the first title to land was issued in the now State of Texas, and it is still the law, and all titles from the Government or individuals must be held in subordination to, and under the modifications imposed by such law.

Whether all the provisions of our Statute are just, or even constitutional, is not now the question. The point is, whether it be repugnant to the Constitution, to allow the possessor in good faith, the full value of his improvements ; whether they do

or do not exceed the full value of the use and occupation. This, as we have seen, must be answered in the affirmative. No doubt, Statutes on the subject of compensation for improvements might be framed, so oppressively against the true owner of the land, as to be obnoxious to the constitutional inhibition ; but the mere allowance of full payment for improvements does not destroy or impair any rights of the owner secured by the Constitution.

Had this cause been fully argued, we might have examined the principles of Equity which might properly have been invoked in support of the honesty and fair dealing required by the Statute. Those principles would not suffer the owner to reap the advantage of all the toils and expenditure of the adverse possessor for years in good faith, without reasonable compensation ; and under our system, this claim to remuneration, even without any Statute, might be set up and enforced in the action brought to try the title. But there being no argument, we refrain from entering into this investigation.

The qualification by the Court, that the defendant was entitled to recover for his improvements only to the extent and amount of the rents and profits of the land, is strictly in accordance with the principles of the Common Law. It is laid down in Coulter's case, (5 Co. 30,) that the disseizor, upon a recovery against him, may *recoup* the damages, to the value of all that he has expended in amending the houses ; that is, the valuable improvements, made by him, may be set off against the claim of the owner for the rents and profits arising from his use and occupation. But the Statute allows full compensation for such improvements, and not only to the extent of the rents and profits ; and, as we have seen such Statute is not repugnant to the Constitution, its provisions must be enforced. The charge of the Court was therefore erroneous, and upon this ground the judgment of the Court below is ordered to be reversed and the cause remanded for a new trial.

Reversed and remanded.