## MULHOLLAND v. JOLLY et al. (No. 8196.)

Court of Civil Appeals of Texas. San Antonio. April 17, 1929.

Rehearing Denied May 29, 1929.

Kleberg & North and M. G. Eckhardt, Jr., all of Corpus Christi, for appellant.

Boone & Savage, of Corpus Christi, and Henry & Bickett, of San Antonio, for appellees.

FLY, C. J. Appellant filed a statutory action in trespass to try title against W. J. Jolly, D. H. Clark, Bert Ashton, the Texas Farm Mortgage & Investment Company, and R. N. Martindale, trustee, the land sought to be recovered being described as: "Farm Tract No. 3, of the Geo. H. Paul Subdivision of the Famous Driscoll Ranch, containing 101.95 acres of land, according to the map or plat of said subdivision on file and of record in the office of the County Clerk of Nueces County, Texas, which land is out of and a part of the Joaquin Lopez de Herrera Original Grant, Abstract 607, and also of the Marian Lopez de Herrera Grant, Abstract 606." Jolly and Clark pleaded all the circumstances by which they had been delivered a deed purporting to be executed and acknowledged by appellant, and had paid the value of the land through a check to appellant, which had been collected by some one claiming to be appellant; that they went into possession of the land in good faith, and made valuable improvements thereon, and had borrowed money from the Texas Farm & Investment Company, and had executed a lien on the land to secure the loan, and that they discovered that appellant had never executed the deed, but that it was a forgery, and they surrendered possession of the land to appellant, only demanding of him that he repay a certain sum which they had paid to lift a mortgage from the land which had been executed by appellant, and repay the taxes paid by them on the land and the value of improvements made by them on the land in good faith. They filed a cross-action for the improvements, taxes, and amount paid to cancel the lien on the property. The Mortgage & Investment Company answered, setting up its claim against its codefendants, asking for judgment for its debt and foreclosure of its lien on the property. It also alleged a change of name to Martindale Mortgage Company.

The cause was tried by the court, a jury being waived, and judgment rendered that appellant was in possession of the land and was in full possession when the original petition was filed, but was entitled to recovery of title to the land; that W. J. Jolly and D. H. Clark were entitled to recover of appellant the value of the permanent improvements placed by them on said land, and the taxes paid by them on the land; that the Mortgage Company recover of appellant the amount owed by him to the Deming Investment Company, secured by a lien on the land in question, which was paid with money advanced by said mortgage company, and that it be subrogated to the lien held by the Deming Investment Company; that the Mortgage Company recover of Jolly and Clark the amount for permanent improvements and taxes; and that the mortgage company be subrogated to their claim and lien and those of Ashton. It was therefore decreed that appellant recover of Jolly and Clark and the Martindale Mortgage Company the title to the land in controversy, and be quieted in such title, subject to the amounts adjudged against him and liens established against the land. The amount of the recovery of the Martindale Mortgage Company against appellant on the amount due the Deming Investment Company was fixed at $1,252.24, the amount of the claim of Jolly and Clark for permanent improvements and taxes was fixed at $3,408.77, less the sum of $421.46, for fences destroyed and amount of rents, leaving a balance in favor of Jolly and Clark of $2,977.31, and a lien for that sum was foreclosed on the land, and Martindale Mortgage Company was subrogated to the amount of the recovery of Jolly and Clark and to the lien on the land in their favor.

Judgment was also rendered against Bert Ashton in favor of Jolly and Clark for rent amounting to $118.12. This appeal was perfected by appellant.

It was agreed by the parties that William Mulholland was the owner of the land on September 17, 1925, and it conclusively appeared that he had owned it since his purchase of it in July, 1910, and that he had never sold or executed any deed to the land or any part thereof, and that he did not execute the deed purporting to have been made by him to D. H. Clark, through which Jolly and Clark had claimed the land. The forgery of the deed and sale of the land to Jolly and Clark was accomplished through M. C. Nelson and W. B. Rachal, neither of whom was known to appellant. The deed recited that appellant was temporarily residing in New Orleans, which he denied. The forgery was proved and admitted. None of the appellees had any knowledge or suspicion of the forgery, but all of them acted in good faith. Jolly and Clark made permanent improvements on the land in good faith, believing that they had good title to the land, and the mortgage company made a loan to Jolly and Clark, and in good faith took a lien on the land to secure the loan. There were no circumstances connected with the execution to arouse the suspicions of any man, no matter how prudent and cautious, as to the authenticity of the deed. As soon as Jolly and Clark learned that appellant claimed that the deed was a forgery, they made a thorough investigation, and, being convinced that the deed was a forgery, they surrendered possession to appellant, and at the time the suit was instituted they were not in possession of the land, and did not claim any title to it. Appellant admitted, before bringing the suit, that he was liable for amounts paid to satisfy the debt and lien held by the Deming Investment Company and for the taxes that became due on the land, but never repaid the same, but afterwards instituted the suit.

■ On its face this is a statutory action of trespass to try title, but in deed and in fact could have been nothing more than a suit to have a forged deed declared void, and the cloud created by it and the lien held by the mortgage company on appellant's title removed. Appellees made no claim to the land, but admitted that the title was in appellant. They did not plead possession of the land for a year nor claim pay for the improvements under the statute, but set out the facts upon which they prayed for the intervention of a court of equity in their behalf. Independent of article 7393, Rev. St. 1925, which extends to a defendant the privilege of recovering pay for permanent and valuable improvements made while in possession in good faith of land adversely held for the period of at least one year before the action for trespass to try title is begun, they sought recovery by cross-action of their expenditures on the land. Appellant did not really enter a court of law to try title to the land; his title was not impugned; he had possession of the land; and could not prove a case of trespass to try title. No one was claiming title to his land; no one was in adverse possession of it. He knew those facts and knew that he could accomplish nothing, except to remove a cloud from his title caused by the forged deed and the mortgage. He was seeking equitable relief, and, in order to obtain it, was compelled to do equity by paying for the permanent improvements and refunding amounts paid to protect the title to the land.

This equitable principle is thus stated in Pomeroy, Equity Jurisprudence, § 1241: "The right to a contribution or reimbursement from the owner, and the equitable lien on the property benefited as a security therefor, have been extended to other cases where a party innocently and in good faith, though under a mistake as to the true condition of the title, makes improvements or repairs or other expenditures which permanently increase the value of the property, so that the real owner when he seeks the aid of equity to establish his right to the property itself, or to enforce some equitable claim upon it, having been substantially benefited, is required, upon principles of justice and equity, to repay the amount expended." The text is supported by quite an array of decisions cited in footnote.

In one of the cases cited the innocent purchaser had paid off a mortgage on the land, and thereby became subrogated to the right of the mortgagor, and it was held that the owner, in seeking the aid of a court of equity, should refund, as he was bound to do to get relief; and that, where the purchasers have paid the assessments and taxes and made improvements in good faith, "he cannot complain that as a condition of regaining possession, he is compelled to account for and pay such taxes, assessments and for such improvements, according to the just and enlightened principles of courts of equity." Miner v. Beekman, 50 N. Y. 339. See, also, Lyons Nat. Bank v. Shuler, 199 N. Y. 405, 92 N. E. 800.

The rule laid down by Pomeroy has been followed at all times by the courts of Texas. Sartain v. Hamilton, 12 Tex. 219, 62 Am. Dec. 524; Dorn v. Dunham, 24 Tex. 366; Saunders v. Wilson, 19 Tex. 200; Hill v. Spear, 48 Tex. 583; French v. Grenet, 57 Tex. 273; Van Zandt v. Brantley, 16 Tex. Civ. App. 420, 42 S. W. 617.

In the cited case of Saunders v. Wilson, Chief Justice Hemphill, for the court, after a full discussion of the equities surrounding the making of permanent improvements in good faith on lands held under defective or void titles, held: "It appears, then, to have been a principle of our former jurisprudence,

that the possessor in good faith should, on eviction, be reimbursed by the owner, for the expenses of improvements made by him, deducting for the rents and profits received; that this was recognized in Roman jurisprudence, the great fountain of most of the modern law of the civilized world; that it is sanctioned, to a great extent in equity, and, in the opinion of Justice Story, should go the whole length of the remedial justice administered under our statute. As this has always been the recognized law of Texas, from the grant of the first title to lands, almost a century and a half since, to the present time, it would seem to be a principle as venerable for its antiquity, as for its fair and impartial justice, and as such, should be enforced by the courts and juries of the country."

As was said in the case of Dorn v. Dunham, herein cited: "The defendant's right to compensation for improvements does not depend upon the intrinsic goodness of his title, but upon the good faith of his possession, and claim of title." It was clearly shown by the facts that Jolly and Clark had taken the deed in good faith and proceeded in all their dealings in connection with the land in the utmost good faith. The plea for compensation for the improvements is not seriously assailed on the ground that they were not made in good faith, but that appellees had not, as required by statute, been in possession of the land for a year before the suit was instituted, and, as before stated, the claim for the improvements is not made under the statute, because the action of appellant was not in truth a case of trespass to try title, because no one claimed a title adverse to appellant, and he was in possession, and these facts were admitted by Jolly and Clark in their answer. By their disclaimer of title to the land and surrender of possession they did not lose their equitable right to the expenditures made by them in good faith for improvements, taxes, and to extinguish the lien on the land created by appellant. Appellees' rights were not dependent upon the statute, but were equitable ones which could be enforced, under the circumstances of this case, as though no statute existed. As said in Wood v. Cahill, 21 Tex. Civ. App. 38, 50 S. W. 1071: "It may be a sound contention, and we think it is, that the statutory plea of improvements in good faith provided for in case of trespass to try title must be presented and tried along with the issue of title to the land in order to obtain the benefits of such statutory remedy. * * * It is well to bear in mind, however, that the right to recover the value of improvements placed upon the land of another in good faith does not arise wholly upon our statute, above referred to, but exists under the principles of equity independent of such statute." That case was approved by the Supreme Court.

It has been held that, where a claim for improvements was not set up in an action of trespass to try title, in which the plaintiff had recovered, an independent suit could be sustained for the value of the improvements. Murphy v. Benson (Tex. Civ. App.) 245 S. W. 249, and Texas cases cited. In this case appellees not only set up their expenditures defensively, but filed a cross-action for them.

The contention that Jolly and Clark could not recover for improvements and other expenditures made in good faith under a forged deed cannot be sustained. The question of whether title was merely defective or void could not be of importance in such cases. The determining question in the case is the good faith exercised in the matter by Jolly and Clark. There was nothing to indicate that they did not exercise prudence and care in securing the deed to the land, and the circumstances surrounding the forgery were such as to deceive, not only the vendees, but banks, real estate men, and investment companies. There was not a circumstance to arouse suspicion, and the forgers bore good reputations. The evidence failed to show a lack of circumspection, prudence, and care on the part of the purchasers of the land. The deed not only purported to be signed by appellant, but had been duly acknowledged before a notary public, and his seal was attached to the acknowledgment. Jolly and Clark paid the reasonable market value of the land. There was no circumstance connected with the whole transaction that tended to show bad faith upon the part of Jolly and Clark. There was nothing suspicious about Jolly getting the real estate agent to give him a part of the commission for selling the land, nor in the fact that no abstract was given until after the deed was delivered. Every one seemed to be satisfied that the title was in appellant. There was no question about that, and there was no evidence of bad faith in Jolly so accepting it.

The statute in regard to title by three years' limitation (Rev. St. 1925, art. 5507) provides that the land must be held under title or color of title, but that statute has no connection whatever with a claim for improvements, even though the courts of Texas had held that color of title could not be created under a forged deed, with which the grantee had no guilty connection. It is held in the case of Elam v. Parkhill, 60 Tex. 581, that, "while the title is not essential upon which to predicate a claim for the value of improvements, it is necessary that the party should enter and claim under color of title," but, in order to avoid misunderstanding as to what is meant by the writer in using the term "color of title," he says: "That is, the party must claim under an apparent title, which he in good faith believes to be the real title to the land." Again, the court said: "To entitle a party to a recovery for the value of improvements it is essential that he be a

possessor in good faith. That is, he must believe that he is the true owner of the land, and be ignorant of the fact that his right is contested by some person claiming a superior title; and notwithstanding he may have notice of an adverse claim, yet if he has reasonable and strong ground for believing such claim to be destitute of any just or legal foundation, other requisites concurring, he may be a possessor in good faith."

All the stress is put upon good faith, and Jolly and Clark fully qualify as possessors of the land improved in good faith, unless all else in the requisites for good faith is destroyed by the use of the words "color of title." Appellees can fully qualify within the meaning of color of title as defined by the court, and in the case from which the quotation has been made the person claiming to have made improvements in good faith had acted under a will about which the court held: "In this particular the will is clear and unambiguous, and there could be no reason for a mistake in its construction." In other words, the instrument under which the defendant claimed title carried on its face evidence of the defects in the title. In this case the deed was absolutely free of anything to arouse suspicion, and was accepted in good faith, and the only ground urged to deprive Jolly and Clark of their expenditures on the land is the fact that the deed to them was a forgery. In the ultimate analysis of the facts of every case, the right to pay for improvements rests upon the good faith, founded upon prudence and reason, of the person who made them. Louder v. Schluter, 78 Tex. 107, 14 S. W. 205, 207; Cahill v. Benson, 19 Tex. Civ. App. 30, 46 S. W. 888.

It is not held in Hussey v. Moser, 70 Tex. 42, 7 S. W. 606, that improvements cannot be made in good faith by a party holding the land under a forged deed, no matter how innocent he may have been, nor however much he may have acted prudently and in good faith in accepting the deed. The opinion does not mention improvements in good faith. The only question involved seemed to have been the question of ten years' limitation. Neither does the case of Marsh v. Weir, 21 Tex. 97, have any applicability to this case.

The arguments presented as to the hardship inflicted on an owner by expensive improvements made under a deed to which his name had been forged apply with as much force in any case of improvements made in good faith by a party who had no title to the land, and such arguments, if sustained, would deny remuneration for improvements made in good faith, in which the true owner might recover. A forged deed may apparently convey title as well as a real conveyance, and, if it is accepted and acted upon without knowledge of its fraudulent character, it should not deprive the party innocently acting under it from recovering for improvements made on the land.

In this case the improvements made by Jolly and Clark were shown to have doubled the value of appellant's land, and the forgery of the deed has inured to his benefit, and a hypothetical case of the hardship placed on the true owner of land by being compelled to pay for improvements which he did not desire have very little force or effect. In this connection, it may be said that the maxim that he who trusts most must suffer most has no place under the facts of this case, but we think that the maxim that "He who seeks equity must do equity" applies to one who seeks to avoid payment of money for the extinguishment of a lien and taxes as well as improvements enhancing the value of his estate, and at the same time desires the cancellation of a deed and removal of cloud from his title. Whether his action in trespass to try title brought him into a court of equity or not the cross-action did. Appellees were not compelled to set up a statutory claim for improvements, but could bring an independent suit for the improvements. Wood v. Cahill, 21 Tex. Civ. App. 38, 50 S. W. 1071; Murphy v. Benson (Tex. Civ. App.) 245 S. W. 249. As said in the last case cited: "We prefer to follow the authorities which hold that relief will be granted in equity to a party making improvements in good faith, by mistake, upon the land of another, either in suit of trespass to try title, or in an independent action for the purpose, or in defense of a suit for removing the improvements." A number of Texas cases are cited to sustain the quotation.

To sum the matter up, article 7393 grants the privilege to a defendant under certain allegations to recover compensation for improvements made on the land of a plaintiff in an action of trespass to try title, but does not attempt to confine him to that defense in order to recover.

We have not seen any Texas case in which it has been held that a void deed could not form the basis for a claim for improvements made in good faith, unless the nullity of the instrument appears on the face of the deed. The basis of the claim for improvements is good faith, founded on reason and prudence, and, of course, where the instrument under which possession is taken gives notice of its nullity, good faith in making the improvements could not exist. In all cases where the deed apparently is legal and purports to convey the land, the party who acts in good faith on such instrument and enters in possession and makes the improvements in justice and equity should be entitled to a recovery.

The evidence clearly established that the improvements were permanent and valuable and doubled the value of the land, and in equity and good conscience appellant should pay for them.

We have endeavored to discuss every question of law presented through the assign-

ments of error and propositions, and conclude that they should not be sustained. Therefore the judgment will be affirmed.